*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

*FEDEQ DV004, LLC, and*          )
*FEDEQ DV005, LLC,*              )
                                )
        *Plaintiffs*            )
                                )
*v.*                            )          *No. 2:19-cv-00382-JHR*
                                )
*CITY OF PORTLAND and*          )
*JON P. JENNINGS,*              )
                                )
        *Defendants*            )

*MEMORANDUM DECISION AND ORDER ON MOTIONS TO DISMISS*[1]

Before me are three motions to dismiss claims in this action. Defendant Jon A. Jennings moves to dismiss Count VIII, the sole claim against him, on the bases that (i) it is barred by the notice of claim, statute of limitations, and governmental employee immunity provisions of the Maine Tort Claims Act, 14 M.R.S.A. § 8101 *et seq*. and, (ii) in the alternative, fails to state a claim upon which relief can be granted and, therefore, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defendant Jon Jennings' Motion to Dismiss ("Jennings Motion") (ECF No. 13) at 1. Should that motion be denied, Mr. Jennings brings a special motion to dismiss the claim against him pursuant to 14 M.R.S.A. § 556, Maine's anti-SLAPP statute. *See* Defendant Jon Jennings' Special Motion to Dismiss under 14 M.R.S. § 556 ("Special Jennings Motion") (ECF No. 26) at 1-2. Finally, plaintiffs FEDEQ DV004, LLC ("Federated 04") and FEDEQ DV005, LLC ("Federated 05") (together, "Federated") move pursuant to Rule 12(b)(6) to dismiss defendant City of Portland's ("City's") counterclaim against them for failure to state a claim upon

---

[1] The parties have agreed to have me preside over all proceedings in this action, including the entry of judgment.  ECF No. 46.

1

which relief can be granted.  *See* Plaintiffs' Motion to Dismiss City of Portland's Counterclaim ("Federated Motion") (ECF No. 31) at 1.[2]  For the reasons that follow, I grant the Jennings Motion, agreeing that the complaint fails to state a claim against Mr. Jennings upon which relief can be granted, but permit Federated 21 days, or by July 27, 2020, to amend the complaint to attempt to do so, failing which Count VIII of the complaint shall be dismissed, deny the Federated Motion, and deem the Special Jennings Motion moot.

## I.  Applicable Legal Standard

The Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011).  Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st

---

[2] While Federated comprises two companies, I henceforth refer to it in the singular for ease of reference.

Cir. 2001).  "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Id.* (citation and internal quotation marks omitted).

## II.  Jennings Motion

### A.  Factual Background

Both Federated and Mr. Jennings focus on the following allegations of the 78-page complaint in debating the merits of Mr. Jennings' motion to dismiss:[3]

Throughout the month of June 2015, the City was being managed by its police chief ("Police Chief") as an interim chief executive, following the departure of its prior interim chief executive.  Complaint (ECF No. 1) ¶ 408.  At the same time, the City was concluding negotiations with finalists for the position of new incoming City manager, and eventually made an offer to Mr. Jennings.  *Id*. ¶ 409.  Prior to his commencement of employment as a City employee, Mr. Jennings took a direct and active role in the trajectory of a multi-tower urban development project planned for the City's Bayside neighborhood, consisting of parking, retail, housing, and other public benefits ("Project").  *Id*. at 1-2, ¶ 410.  Although his tenure with the City did not commence until mid-July 2015, Mr. Jennings held multiple discussions with Federated and City staff members, including the Police Chief as interim City manager, throughout June 2015.  *Id*. ¶ 411.  On June 26, 2015, weeks before starting as City manager, Mr. Jennings even met with Federated in person to discuss the Project and his soon-to-be staff in depth.  *Id*. ¶ 412.

---

[3] The First Circuit has instructed that, in reviewing a complaint for sufficiency pursuant to Rule 12(b)(6), a court "should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action."  *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation and internal punctuation omitted).  "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible."  *Id*.  "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility."  *Id*. (citation and internal quotation marks omitted).

Prior to his commencement of employment, Mr. Jennings was actively directing City staff members with regard to the Project. *Id*. ¶ 413. In a June 2015 meeting with Federated, the Police Chief acting as the City's interim manager advised Federated that Mr. Jennings contacted him to inform him that Federated reached out to and met with Mr. Jennings to discuss the Project. *Id*. ¶ 414. The position held by the Police Chief is and was a direct report to the position Mr. Jennings assumed in July 2015. *Id*. ¶ 415. The position held by the City's economic development director, who drafted the June 19th Communication, was also a direct report to the position Mr. Jennings assumed in July 2015. *Id*. ¶ 416.[4] Direct reports are subject to performance reviews by their superiors, in this case Mr. Jennings. *Id*. ¶ 417. By means of intimidation arising from his incoming status as the direct supervisor of both the Police Chief, acting as interim City manager, and the City's economic development director, as author of the June 19th Communication, Mr. Jennings acted in a personal non-City employee capacity when he procured the breach of the Purchase and Sale Agreement entered into by the City and Federated on June 23, 2011 ("PSA"), a breach which but for his direct involvement would not have occurred, and proximately damaged Federated thereby. *Id*. ¶¶ 43, 418.

## B. Discussion

Federated alleges in Count VIII that Mr. Jennings tortiously interfered with a contractual relationship. *See* Complaint at 76-77. "A claim under Maine law for tortious interference with prospective economic advantage requires a plaintiff to prove the following elements: "'(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately

---

[4] The "June 19th Communication" is defined as a "formal correspondence" delivered to Federated by the City late in the day on Friday, June 19, 2015, that led "Federated to conclude it was a means of preventing further discussion of non-housing project changes." Complaint ¶ 167.

caused damages.'" *Old Town Util. & Tech. Park, LLC v. Consol. Edison, Sols., Inc.*, 2:19-cv-00029-JDL, 2019 WL 4784603, at *9 (D. Me. Sept. 30, 2019) (quoting *Rutland v. Mullen*, 798 A.2d 1104, 1110 (Me. 2002) (footnotes omitted)).  Federated alleges that Mr. Jennings interfered with its contract with the City by means of intimidation, not fraud.  *See* Complaint ¶ 418.

"Under the well-marked boundaries for this tort in Maine, 'A person engages in intimidation when that person: (1) communicates a statement [or threat] to a third person; (2) that suggests adverse physical, economic, or emotional consequences to the third person; (3) for the purpose of inducing the third person to act [or fail to act] regarding the plaintiff; and (4) the third person acts based on the statement or threat, damaging the plaintiff.'" *St. Pierre v. E. Me. Med. Ctr.*, No. 1:12-CV-0265-NT, 2013 WL 5503146, at *3 (D. Me. Sept. 30, 2013) (quoting D. Alexander, *Maine Jury Instruction Manual* § 7-33 (4th ed. 2008) (brackets in original)).

As Mr. Jennings argues, *see* Defendant Jennings' Reply Memorandum in Support of Motion to Dismiss ("Jennings Reply") (ECF No. 25) at 5, the allegations on which Federated relies are devoid of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Iqbal*, 556 U.S. at 678.  Federated identifies no statement or threat communicated by Mr. Jennings to any particular City employee or employees during the month of June 2015 that suggested adverse physical, economic, or emotional consequences to any such individual absent a breach of the PSA.  *See* Complaint ¶¶ 408-18; Plaintiffs' Opposition to Defendant Jon P. Jennings' Motion to Dismiss ("Federated Opposition") (ECF No. 18) at 17-19.[5]

---

[5] Federated does allege elsewhere in its complaint that "Mr. Jennings eventually started as the City's new chief administrative and executive official on July 13, 2015[,]" Complaint ¶ 169, and that, "[d]uring Maine's short construction season, halfway through the one year period allotted to receive and commence construction under an already difficult-to-procure building permit, Mr. Jennings ordered his staff to completely stop reviewing the Project altogether, effectively ordering his staff to go 'pencils down,' and forbade them from even interacting with Federated or its many third-party vendors until further notice[,]" *id.* ¶ 170.  However, I construe the complaint to allege that this

5

Federated contends that, to the extent that it fails to state a claim against Mr. Jennings, his remedy is to file a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) and, in any event, its claim against Mr. Jennings should not simply be dismissed with prejudice.  *See id.* at 18-19.  Mr. Jennings is not obliged to file a Rule 12(e) motion; he properly chose to challenge the sufficiency of the pleadings by way of Rule 12(b)(6).  *See, e.g.*, 5C Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, *Federal Practice and Procedure* § 1376 (3d ed. 2008, updated Apr. 2020) ("If the movant believes the opponent's pleading does not state a claim for relief, the proper course is a motion under Rule 12(b)(6) even if the pleading is vague or ambiguous.  Moreover, even if the pleading is so sketchy that it cannot be construed to show a right to relief, the proper attack is by a motion under Rule 12(b)(6) rather than Rule 12(e).").

Nonetheless, I will afford Federated the opportunity to amend its complaint, no later than July 27, 2020, to state a claim against Mr. Jennings for tortious interference with a contractual relationship, failing which Count VIII shall be dismissed.

### III.  Federated Motion

### A.  Counterclaim I: Breach of Garage Agreement

### 1.  Factual Background

The City is a municipal entity organized under the laws of Maine.  Counterclaim Against Counterclaim Defendants FEDEQ DV0004 LLC and FEDEQ DV005 LLC ("Counterclaim"), commencing on page 72 of Defendant City of Portland's Amended Answer to Complaint, Affirmative Defenses, Jury Trial Demand, and Counterclaim Against Counterclaim Defendants FEDEQ DV0004 LLC and FEDEQ DV0005 LLC ("Amended Answer") (ECF No. 19), ¶ 1.  The

---

conduct occurred during Mr. Jennings' official employment on or after July 13, 2015, rather than during the June 2015 time period at issue in Count VIII.

Federated plaintiffs are direct or indirect assignees of Legacy Park Apartments, LLC ("Legacy") and FEDEQ DV001, LLC ("Federated 01"). *Id*. ¶ 4. On or about October 15, 2012, the City and Legacy executed an agreement called "Parking Garage Contribution and Funding Agreement" ("Garage Agreement") for the construction of a parking garage in the City. *Id*. ¶ 6. The City and Legacy's assignee, Federated 01, amended the Garage Agreement by an amendment dated October 14, 2014 ("First Garage Amendment"). *Id*. ¶ 7. The City and Federated 01 further amended the Garage Agreement by an amendment dated May 16, 2016 ("Second Garage Amendment"). *Id*. ¶ 8.

Pursuant to the terms of the Garage Agreement as amended, Legacy, or its assignees, was required to obtain a certificate of occupancy with regard to the garage contemplated by the Garage Agreement within two years of requisitioning $1 million from the City. *Id*. ¶ 9. Legacy, or its assignees, requisitioned in excess of $1 million from the City under the Garage Agreement, as amended, on or before September 27, 2017. *Id*. ¶ 10. The City made disbursements to Legacy, or its assignees, under the terms of the Garage Agreement, as amended, in response to the requisitions submitted to the City. *Id*. ¶ 11. Federated, as assignee of Legacy, did not obtain a certificate of occupancy with regard to the garage contemplated by the Garage Agreement, as amended, within two years of requisitioning $1 million from the City. *Id*. ¶ 12. The City provided Legacy (and its assignees) ample notice of its obligation under the Garage Agreement, as amended, to obtain a certificate of occupancy with regard to the garage contemplated by the Garage Agreement, as amended, within two years of requisitioning $1 million from the City. *Id*. ¶ 13. By virtue of its failure to obtain a certificate of occupancy with regard to the garage contemplated by the Garage Agreement, as amended, within two years of requisitioning $1 million from the City, Federated is in breach of the Garage Agreement, as amended. *Id*. ¶ 14.

In addition, the Garage Agreement, as amended, requires that Legacy, or its assignees, shall provide sufficient additional funds for the completion of the construction of the garage through its own equity or financing from a construction lender. *Id*. ¶ 15. On several occasions, the City requested that Legacy (or its assignees) provide tangible assurances of its ability to perform under the Garage Agreement, as amended. *Id*. ¶ 16. The City provided Legacy (and its assignees) ample notice of its obligation under the Garage Agreement, as amended, to provide tangible assurances of its ability to perform under the Garage Agreement, as amended. *Id*. ¶ 17. Despite the City's requests and notices, Legacy (or its assignees) has failed to provide tangible assurances of its ability to perform under the Garage Agreement, as amended. *Id*. ¶ 18. The failure of Federated, as assignee of Legacy, to provide tangible assurances of its ability to perform under the Garage Agreement, as amended, constitutes a breach of the Garage Agreement, as amended. *Id*. ¶ 19.

Pursuant to the Garage Agreement, as amended, Federated's breach of the Garage Agreement, as amended, relieves the City of any of its obligations under the Garage Agreement, as amended. *Id*. ¶ 20. In addition, pursuant to the Garage Agreement, as amended, Federated's breach of the Garage Agreement, as amended, permits the City to repurchase the property upon which the garage was to be constructed based on a formulation provided in the Garage Agreement, as amended. *Id*. ¶ 21. Notwithstanding the City's right to repurchase the property upon which the garage was to be constructed in the event of a default, on or about June 16, 2016, Federated 04 granted a mortgage to FEDEQ Sponsor Entity V, LLC as security for a promissory note for $11,535,000. *Id*. ¶ 22. Notwithstanding the City's right to repurchase the property upon which the garage was to be constructed in the event of a default, on or about June 16, 2016, Federated 04 granted a 99-year lease to Redwood Development Consulting, LLC ("Redwood") with regard to

the garage and real estate that are the subject of the Garage Agreement, as amended.  *Id*. ¶ 23.  On or about June 16, 2016, Federated 04 granted an amended 99-year lease to Redwood with an option to purchase that garage and real estate.  *Id*. ¶ 24.

Federated 04 did not provide the City with any advance notice of either the aforementioned mortgage or the aforementioned lease (both in its original form and as amended) prior to executing those documents or recording them with the Cumberland County Registry of Deeds.  *Id*. ¶¶ 25-26. The mortgage and lease (both in its original form and as amended) granted by Federated 04 constitute a breach of the Garage Agreement, as amended, as those obligations or encumbrances interfere with the City's repurchase right under the Garage Agreement, as amended.  *Id*. ¶ 27.

As a remedy for the alleged breach of the Garage Agreement, as amended, the City requests, *inter alia*, an order that Federated "convey the property referenced in the Garage Agreement, as amended, to the City free and clear of any mortgages, liens, leases, or other encumbrances, after the City makes the payment required by the terms of the Garage Agreement, as amended, less any funds distributed to Federated (or its assignors or designees) by the City under the Garage Agreement[.]"  *Id*. at 75.

## 2.  Discussion

### a.  Breach of Obligation to Obtain Certificate of Occupancy

Federated first contends that the City fails to state a claim for breach of the obligation to obtain a certificate of occupancy for the garage in a timely manner because the City fails to allege either that (i) it disbursed $1 million to Federated on a certain date, as required by the Garage Agreement to trigger the two-year timetable within which Federated was to obtain that certificate, or (ii) the funds were requisitioned for the purpose of garage construction, as additionally required by the First Garage Amendment.  *See* Federated Motion at 7-9.

Nonetheless, a document on which the City relies that is appended to the complaint makes clear that the City construes the First Garage Amendment to have superseded the triggering language of the original.  *See* City of Portland's Response in Opposition to Motion to Dismiss Counterclaims ("City Opposition") (ECF No. 53) at 5; Notice of Anticipatory Breach and Request for Assurances dated February 19, 2019 ("February 2019 Notice"), Exh. P (ECF No. 1-16) to Complaint, at 2 ("Paragraph 4(b) of the Garage Agreement, as amended, specifies in relevant part, that '[t]he Garage shall have reached Start-Up Phase within two (2) years after the Buyer shall have requisitioned $1,000,000 in City Grant Funds for Garage construction.'") (brackets in original).[6]  The City's interpretation is reasonable.

"Contract language is ambiguous when it is reasonably susceptible of different interpretations."  *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983).  Whereas Paragraph 1 of the Garage Agreement provided that "[t]he Garage shall have reached 'Start-Up Phase' as defined below within two (2) years after the date on which a total of $1,000,000.00 in City Grant Funds has been requisitioned by Legacy Park *and disbursed by the City* to Legacy Park[,]" Garage Agreement ¶ 1 (emphasis added), Paragraph 4(b) of the First Garage Amendment provided, "The Parking Garage Agreement is hereby amended to reflect the following terms and conditions: . . .  The Garage shall have reached Start-Up Phase within two (2) years after the Buyer shall have requisitioned $1,000,000 in City Grant Funds for Garage construction."  First Garage Amendment, Exh. F (ECF No. 1-6) to Complaint, ¶ 4(b).  The City reasonably construes the amended language to supersede the original, defining the triggering event solely as the requisitioning of funds, foreclosing dismissal on this basis.  *Compare, e.g.*, *Hirschfeld v. Athena Point Lookout, LLC*, Docket no. 1:18-cv-00203-GZS, 2018 WL 5848968, at *3 (D. Me.

---

[6] The term "Start-Up Phase" is defined, in relevant part, as "that period commencing when the Garage receives a Certificate of Occupancy[.]"  Garage Agreement, Exh. B (ECF No. 1-2) to Complaint, ¶ 5(a).

Nov. 8, 2018) (dismissing breach of contract claim pursuant to Rule 12(b)(6) when contract language was unambiguous, and defendant could not have breached it as a matter of law).

That the City did not allege in its Counterclaim that the funds were requisitioned solely for garage construction is not fatal.  In the City's 2019 notice apprising Federated that, in its view, Federated had anticipatorily breached that provision, the City acknowledged that the First Garage Amendment provided that funds were to be requisitioned for garage construction.  *See* February 2019 Notice at 2.  The City, therefore, implied that this condition had been met.

Federated next contends that, in any event, the City fails to state a claim because its bid for a remedy for breach of the obligation to obtain a certificate of occupancy is premature.  *See* Federated Motion at 9-10.  Federated observes that the City never alleged that it provided written notice of a material breach triggering Federated's 90-day cure period and, in any event, the 90-day cure period could not have begun to run until September 27, 2019, the date that Federated's performance was due  *See id*.  As Federated notes, *see id.* at 10, even if the City had provided a written notice of default that very day, the 90-day cure period would not have expired as of October 29, 2019, the date the City filed its counterclaim, *see* ECF No. 19, or even as of November 19, 2019, the date Federated filed the instant motion to dismiss, *see* ECF No. 31.

Nonetheless, the City points out that it proceeds by way of the law of anticipatory breach. *See* City Opposition at 5-7; February 2019 Notice at 4-5; *Drinkwater v. Patten Realty Corp*., 563 A.2d 772, 776 (Me. 1989) ("A party to a contract with reasonable grounds to believe the other party will not perform may demand assurance of performance and may treat as a repudiation a failure to provide adequate assurance within a reasonable time.") (citing Restatement (Second) of Contracts § 251).

In its February 2019 Notice, the City demanded assurances by March 15, 2019, that, *inter alia*, Federated would "reach the 'Start-Up Phase' no later than September 27, 2019," two years from the date of the requisition of $1,000,000 in City funds, failing which "the City will consider the Agreements to be effectively repudiated and/or that said repudiation is anticipated, and the City will move forward with breach of contract proceedings seeking the repurchase remedy set forth in ¶ 9 of the Garage Agreement."  February 2019 Notice at 2, 5.  The City alleges that, when Federated failed to provide adequate assurances within a reasonable time period, it elected to treat that lack of assurance as a breach.  *See* Counterclaim ¶¶ 18-19.  The City, accordingly, states a claim for anticipatory breach of Federated's obligation to obtain a certificate of occupancy and/or provide adequate assurances that it would do so.

### b.  Breach of Obligation to Provide Sufficient Funds

Federated next contends that the City fails to state a claim for breach of contract based on Federated's alleged failure to provide sufficient additional funds to complete the garage and/or to provide assurances that it would do so.  *See* Federated Motion at 10-12.  Federated asserts that, pursuant to the Garage Agreement, that obligation arose only after the City had disbursed the full $9,000,700 in funding it was obligated to provide, and the City does not allege that it did so.  *See id*. at 10-11.

However, again, the City proceeds by way of the law of anticipatory breach.  *See* City Opposition at 5-7; February 2019 Notice at 3, 5; *Drinkwater*, 563 A.2d at 776.  In its February 2019 Notice, the City noted that, in a prior correspondence, it had "requested tangible assurances of FEDEQ's financial ability to perform under the Garage Agreement" and that Federated had "not provided them, in breach of its contractual obligations."  February 2019 Notice at 3; *see also* Letter dated March 16, 2018, from City to, *inter alia*, Federated ("March 2018 Letter"), Exh. O (ECF

12

No. 1-15) to Complaint, at 4 (denying "all outstanding requisitions unless and until the Federated Companies can provide the City with[,]" *inter alia*, "verifiable assurances of its financial capacity to complete both the garage project and Somerset Street improvements").

In its February 2019 Notice, the City requested "assurances in the form of a letter from a recognized financial institution certifying that FEDEQ has funds available to it in the amount of at least $12 million to fulfill its obligations under the Garage Agreement[.]" February 2019 Notice at 5. The City warned that, if it did "not receive said assurances by March 15, 2019," it would "consider the Agreements to be effectively repudiated and/or that said repudiation is anticipated, and . . . move forward with breach of contract proceedings seeking the repurchase remedy set forth in ¶ 9 of the Garage Agreement." *Id*. The City alleges in its Counterclaim that, despite its requests and notices, "Legacy (or its assignees) has failed to provide tangible assurances of its ability to perform under the Garage Agreement, as amended[,]" a failure that "constitutes a breach of the Garage Agreement, as amended." Counterclaim ¶¶ 18-19. The City, accordingly, states a claim for anticipatory breach of contract based on Federated's failure to provide sufficient additional funds to complete the garage and/or tangible assurances of its financial capability to do so.[7]

### c. Breach Based on Lack of Advance Notice of Mortgage and Lease

Federated next asserts that the City fails to state a claim for breach of contract based on Federated's alleged failure to provide advance notice that it had secured a mortgage using the property as collateral, granted a 99-year lease of that property, and recorded those transactions at the Cumberland County Registry of Deeds. *See* Federated Motion at 12-14. Federated points out

---

[7] Federated adds that the City inconsistently complains of breach of contract based both on its failure to provide financing and its use of the garage as collateral to obtain financing. *See* Federated Motion at 11-12. These positions are not necessarily inconsistent. As discussed below, the City complains of the manner in which the financing was accomplished.

that the Garage Agreement, as amended, does not require such advance notice.  *See id.* at 12.
However, the City alleges that Federated's grant of the mortgage and lease without advance notice
interfered with its repurchase right pursuant to that agreement.  *See* Counterclaim ¶ 27; Garage
Agreement ¶ 9 (providing that, in the event of a material default remaining uncured within 90 days
of receipt of written notice from the City, Legacy Park agreed, at the City's request, to convey the
garage and related real property to the City).

Federated nonetheless protests that (i) the Garage Agreement expressly contemplated the
need to use the garage property as collateral, (ii) in any event, the City does not allege that any
encumbrance or recordation "prevent[ed]" its contemplated remedy of reacquisition, (iii) the
Garage Agreement was amended in 2016 to "contradict[]" the City's right to reacquire the garage
property free and clear of encumbrances, and (iv) the City overlooks language in the Second
Garage Amendment limiting its purported reacquisition remedy to "'Lot 6 within the Amended
Subdivision Plan or such other property depicted on such Plan, as may be further amended, on
which Buyer is <u>approved to construct</u> the Garage.'"  Federated Motion at 14 (quoting Second
Garage Amendment, Exh. L (ECF No. 1-12) to Complaint, ¶ II(3)) (emphasis added by Federated).

Federated is correct that the Garage Agreement was amended in 2016 to provide, in a
section dealing with the cost to the City of reacquisition, "The City may at the closing of such
repurchase, use the Repurchase Price to pay-off and remove any and all then existing mortgages,
liens, assessments or other encumbrances on the property being repurchased."  Second Garage
Amendment ¶ II(3).  Yet, the parties did not amend the following section, which continues to
provide:

> The City acknowledges that Legacy Park will most likely use the Garage and the
> Garage Land as collateral for a construction loan for the purpose of finishing the
> construction of the Garage and other costs and improvements related to the project.
> The City therefore agrees to work on documents at the time of such financing, with

14

Legacy Park and its construction lender, to make it possible for the City to have the remedy described above in concept, and to also permit such construction financing.

*Compare* Original Garage Agreement ¶ 9 *with* Second Garage Amendment ¶ II(3).  Therefore, the Garage Agreement, as amended, reasonably can be construed to have provided the City an option, in exercising its remedy of reacquisition of the garage property, to use the proceeds to pay off encumbrances, but not to require that it proceed in that fashion.  Further, while Federated views the language of the Garage Agreement as a commitment by the City to help it secure financing, that language also reasonably can be read as a commitment by Federated to provide an opportunity for the City to work with Federated's lender to ensure the City's access to its remedy of repurchase of the Garage property.  A provision by Federated of notice after the fact, solely through recordation, reasonably could be read to thwart that intention.

Federated next contends that the City ignored the "Lot 6" language quoted above, adopted as part of the Second Garage Amendment.  *See* Federated Motion at 13-14.  Federated argues that this language "makes clear that the parties envisioned the reacquisition remedy applying *only* where Federated defaulted in timely construction of the Garage after it was approved to do so, assuming that the City had also contributed its share of the related funding."  *Id*. at 14 (emphasis added by Federated).  Federated contends that, because "the City has not alleged that Federated is or ever was <u>approved to construct</u> the Garage, or where the Garage was to be constructed[,]" it has failed to lay a predicate for its asserted repurchase right.  *Id*. (emphasis added by Federated).

Yet, the 2016 language on which Federated relies reasonably could be read to pertain either to Lot 6 *or* to any other property on which Federated was later approved to construct the Garage. In any event, as discussed above, the thrust of the City's claim is that the failure to provide advance

notice of the mortgage and lease interferes with its repurchase right, not that the preconditions to the right have been satisfied.  *See* Counterclaim ¶ 27.[8]

### d.  Prayer for Relief in Form of Conveyance of Garage Property

Federated, finally, argues that the City fails to state a claim for the remedy of reconveyance of the garage property because, rather than alleging that it met the prerequisites for that remedy pursuant to the Garage Agreement, it simply included its request for reconveyance in its prayer for relief.  *See* Federated Motion at 14-15; Federated Reply at 6 ("[T]he City completely fails to explain why it elected to include a claim for specific performance in its prayer for relief, rather than attempting to plead it as a cause of action, or how, therefore, it has met the obligation incumbent upon it to properly do so.  In Plaintiffs' view, the reason for this is quite obviously because such a claim would, similar to the other causes of action in the Counterclaim, ultimately fail due to a conflict with the Agreements.").

Yet, specific performance is a remedy, *see, e.g., Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶ 21, 1 A.3d 416, 422 ("It is within the trial court's equitable powers to apply the remedy of specific performance when a legal remedy is either inadequate or impractical.") (citation and internal quotation marks omitted), and the City's request for that remedy is not a basis for dismissal for failure to state a claim.

### B.  Counterclaim Count II: Breach of Somerset Street Agreement

### 1.  Factual Background

On or about October 14, 2014, the City and Federated 01 entered into an agreement titled "Agreement by and between FEDEQ DV001 and City of Portland on Costs For Off-Site

---

[8] Federated also protests that, "in the case of its attempted reacquisition of the Garage Site, the City has not alleged which of the two Plaintiffs owns the relevant parcel, leaving at least one Plaintiff responsible for defending a baseless claim" and preventing the City from stating claims upon which relief can be granted.  Plaintiff's Reply Memorandum in Support of Motion to Dismiss ("Federated Reply") (ECF No. 54) at 5.  However, the City alleges that "[t]he Federated plaintiffs are direct or indirect assignees of [Legacy] and [Federated 01][,]" Counterclaim ¶ 4, and requests reconveyance of the garage property as an equitable remedy.

Improvements Improving Somerset Street, to be Partially Funded by City of Portland" ("Somerset Street Agreement"). Counterclaim ¶ 29. Federated 04 and/or Federated 05 is the assignee of Federated 01 with regard to the Somerset Street Agreement. *Id*. ¶ 30. Pursuant to the Somerset Street Agreement, the parties agreed to undertake certain improvements to Somerset Street in Portland. *Id*. ¶ 31. Under the terms of the Somerset Street Agreement, Federated 01, or its assignees, agreed to perform certain work based upon a timeline Federated 01 was to provide to the City. *Id*. ¶ 32. Federated 01, or its assignees, have not provided the City with a timeline for work as required by the Somerset Street Agreement. *Id*. ¶ 33. Federated, as assignee of Federated 01, is in breach of the Somerset Street Agreement based on its failure to provide the City with a timeline for work as required by the Somerset Street Agreement. *Id*. ¶ 34.

Federated 01, or its assignees, have not commenced the work as required by the Somerset Street Agreement, nor have they demonstrated that they have procured the construction contracts necessary for the work. *Id*. ¶ 35. Federated, as assignee of Federated 01, is in breach of the Somerset Street Agreement based on its failure to commence the work under the Somerset Street Agreement or to demonstrate that it has procured the construction contracts necessary for the work. *Id*. ¶ 36.

Under the terms of the Somerset Street Agreement, Federated 01, or its assignees, are required to provide the City with evidence of their financial resources to fund their contribution toward the costs of the work in a form reasonably acceptable to the City's director of finance. *Id*. ¶ 37. Federated 01, or its assignees, have not provided the City with evidence of their financial resources to fund their contribution toward the costs of the work in a form reasonably acceptable to the City's director of finance. *Id*. ¶ 38. Federated, as assignee of Federated 01, is in breach of the Somerset Street Agreement based on its failure to provide the City with evidence of its financial

17

resources to fund its contribution toward the costs of the work in a form reasonably acceptable to the City's director of finance. *Id*. ¶ 39.

On or about February 15, 2017, Legacy, or its assignees, requisitioned money from the City under the Somerset Street Agreement. *Id.* ¶ 40. The City made disbursements to Legacy, or its assignees, under the terms of the Somerset Street Agreement in response to the requisitions submitted to the City. *Id*. ¶ 41. As a result of Federated's breach of the Somerset Street Agreement, the City is entitled to be relieved of all obligations under the Somerset Street Agreement and to the return of funds distributed to Federated (or its predecessors in interest) by the City under the Somerset Street Agreement. *Id.* ¶ 42.

As a remedy for these alleged breaches of the Somerset Street Agreement, the City seeks, *inter alia*, an order that Federated "return the funds distributed to Federated (or its predecessors in interest) by the City under the Somerset Street Agreement[.]" *Id*. at 77.

## 2. Discussion

### a. Breach of Obligation to Provide Timeline

Federated first contends that the City fails to state a claim for breach of the Somerset Street Agreement predicated on its alleged failure to provide a timeline because the City inconsistently admits that it was provided a timeline for the work and alleges that Federated failed to provide a timeline and, in any event, the parties agreed that they would jointly collaborate on a schedule, not that Federated would provide one. *See* Federated Motion at 15-16.

The Somerset Street Agreement indeed states that "FEDEQ and the City have jointly agreed to a schedule or timeline for the Project, which is attached hereto as Attachment B." Somerset Street Agreement, Exh. G (ECF No. 1-7) to Complaint, ¶ 1. However, Attachment B states: "Attachment B to Cost Sharing Arrangement Timeline for Project – To Be Provided[.]"

18

Attach. B to Somerset Street Agreement.  In addition, a section of the agreement pertaining to procedures for making disbursements states, "A copy of the construction schedule will be submitted to the City at the beginning of the project."  Somerset Street Agreement ¶ 3(c).  While the agreement indeed contemplates a joint agreement to a timeline, it is unclear who was to provide the missing timeline (Attachment B simply states, "To Be Provided") and the extent, if any, of the overlap between the missing timeline and the construction schedule that Federated seemingly was to provide.  Given these ambiguities, it is unclear whether the terms of the Somerset Street Agreement itself undermine the City's claim that Federated failed to provide a timeline as provided therein.  Dismissal for failure to state a claim, hence, is unwarranted on this basis.

### b.  Breach of Obligation to Commence Work or Procure Necessary Contracts

Federated next asserts that the City fails to state a claim for breach of contract predicated on Federated's failure to commence the work required by the agreement by a certain date or demonstrate that it had procured the necessary contracts.  *See* Federated Motion at 16.  Federated asserts that the City fails to allege that the Somerset Street Agreement contained such provisions and, in any event, it does not.  *See id*. ("Nowhere does the Somerset Street Agreement obligate Federated to demonstrate the *existence* of construction contracts, and particularly not by a date certain, as alleged in the Counterclaim.").

Again, however, the City rejoins that Federated fails to appreciate the nature of its claim as one for anticipatory breach.  *See* City Opposition at 5-7.  The City stated, in its February 2019 Notice, that, although paragraph 4 of the Somerset Street Agreement provided that Federated was responsible for procuring necessary construction contracts, Federated had not "commenced any of the improvements contemplated in the Agreement[,]" and there was "no evidence that would support a conclusion that [it] ha[d] procured the contracts necessary in this regard."  February 2019

Notice at 4.  The City, therefore, sought assurances by March 15, 2019, that Federated would "meet its obligations under the Somerset Street Agreement[,]" failing which the City would consider that agreement to have been "effectively repudiated and/or that said repudiation is anticipated[.]"  *Id*.

The City alleges that Federated failed to provide this evidence, *see* Counterclaim ¶¶ 35-36, thereby stating a claim for anticipatory breach of the Somerset Street Agreement.

### c.   Breach of Obligation to Provide Satisfactory Evidence of Financial Resources

Federated next contends that the City fails to state a claim for breach of the purported obligation to provide evidence of financial resources in a form reasonably acceptable to the City's Director of Finance because that duty arose only prior to the issuance of a "Building Permit," an undefined term, and the City has not alleged that Federated applied for a Building Permit. Federated Motion at 16-17.  Federated adds that, in any event, this duty was not a material one but, rather, a precondition to the issuance of the permit.  *See id.*

Again, however, the City predicates this claim on an anticipatory breach.  *See* City Opposition at 5-7.  The City stated, in its February 2019 Notice, that Federated was "in default of both ¶¶ 1 and 4 of the Somerset Street Agreement because it neither provided the necessary timeline nor has it commenced any of the improvements contemplated in the Agreement." February 2019 Notice at 4.  Accordingly, the City requested that Federated provide the City assurances, no later than March 15, 2019, of its ability to complete the contemplated work in the form of the evidence required by Paragraph 2 of the Somerset Street Agreement prior to the issuance of a permit for street improvements, failing which the City would consider that agreement to have been "effectively repudiated and/or that said repudiation is anticipated[.]"  *Id*. at 4-5.  The City specified that this assurance should take "the form of a letter from a recognized financial

institution certifying that FEDEQ has funds available to it in the amount of . . . at least $1,333,333 to fulfill its obligations under the Somerset Street Agreement." *Id*. at 5.

In this context, a failure to provide the requested evidence reasonably can be viewed as material, as, in the City's view, the entire Somerset Street project was in jeopardy.  The City alleges that Federated failed to provide this evidence, *see* Counterclaim ¶ 38, thereby stating a claim for anticipatory breach of the Somerset Street Agreement.

### d.  Prayer for Relief in Form of Return of Funds

Federated, finally, asserts that the City fails to state a claim for relief from further obligation pursuant to the parties' agreement or the return of funds because the City conflates a prayer for relief with a cause of action, and "[n]owhere in the Somerset Street Agreement did the parties agree that, in the event of a breach by Federated, Federated would simply 'return the funds distributed to [it]. . . .' as alleged by the City."  Federated Motion at 17-18

Federated correctly notes that the Somerset Street Agreement is silent on the question of the relief to be afforded the City in the event of a material breach.  *See generally* Somerset Street Agreement.  However, that does not preclude the City from seeking the requested relief as a remedy for such a breach.

### IV.  Conclusion

For the foregoing reasons, I **GRANT** the Jennings Motion, agreeing that the complaint fails to state a claim against Mr. Jennings upon which relief can be granted, but **DIRECT** that Federated file on the ECF docket, no later than July 27, 2020, an amended complaint addressing this deficiency, failing which Count VIII of the complaint shall be dismissed, **DENY** the Federated Motion, and **DEEM** the Special Jennings Motion **MOOT**.

Dated this 5th day of July, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge