# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| FEDEQ DV004 LLC and <br> FEDEQ DV005 LLC, <br><br>     Plaintiffs, <br><br> v. <br><br> CITY OF PORTLAND and <br> JON JENNINGS, <br><br>     Defendants | Civil Docket No. 2:19-cv-00382-JHR |

**DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1927 WITH INCORPORATED MEMORANDUM OF LAW**

Defendants City of Portland and Jon Jennings ("Jennings") hereby move, pursuant to Fed. R. Civ. P. 11(c)(2) as well as under the authority of 28 U.S.C. § 1927 for the imposition of sanctions against Plaintiffs.[1]  As explained in Jennings's motion to dismiss Plaintiffs' Second Amended Complaint, Plaintiffs' purported attempt to cure the deficiencies that warranted dismissal of their first effort to plead a tort claim against Jennings, by serving a Second Amended Complaint to include a wide variety of details that are immaterial to any issue that could support such a claim, is frivolous.  Plaintiffs' legal theory and request for relief are frivolous.  Sanctions are necessary here both to deter these Plaintiffs, and others who would follow in their footsteps, from wasting their opponents', and the judicial system's, time and resources through the need to address pleadings asserting an unreasonable and vexatious cause of

---

[1] Pursuant to Rule 11(c) of the Federal Rules of Civil Procedure, this motion was served under Rule 5 on Plaintiffs' counsel on August 18, 2020, within the 21-day safe harbor of the rule.  *See* Certificate of Service, below.

action. The only reasonable conclusion is that the claim against Jennings personally was asserted to harass, cause unnecessary delay, and/or needlessly and unreasonably increase the cost of litigation for both Jennings and the City. *See* Fed. R. Civ. P. 11(b)(1), 28 U.S.C. § 1927.

## MEMORANDUM OF LAW

First, a word about Plaintiffs' pleadings overall: The first six counts of Plaintiffs' pleading (those not subject to the pending second motion to dismiss and second special motion to dismiss), containing and incorporating 407-paragraph Complaint allegations of multiple sentences, themselves violate Rule 8 of the Federal Rules of Civil Procedure, requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While it is true that federal court pleading standards require a relative level of precision beyond mere "notice" pleading, that is not where Plaintiffs' Rule 8 violation lies in this instance: here, the 407-paragraph, multi-sentence allegations, are a model of obfuscation, vagary, and complexity-for-the-sake-of-complexity, that defies the Rule 8 standard of pleadings. They defy the ordinary reader's comprehension. A complaint filed in federal court should not require extraordinary hours upon hours to read and re-read, just in order to discern meaning. It is true that all experienced counsel have filed complex civil actions in this Court, including pleadings that have held paragraph allegations numbering in the hundreds, and so it is not necessarily the length alone that violates Rule 8 here: This Plaintiffs' pleading truly stands apart. It is a long pleading that defies a full and fair reading by reasonably intelligent individuals. What is the breach Plaintiffs are alleging? What provision(s) of the contract? When did it occur? After reading Plaintiffs' pleading, the ordinary intelligent person does not come away with concise

understanding of these central points. Fed. R. Civ. P. 8(a). We contend that the pleading style is deliberate, and intended to vex and obfuscate the true nature of the case.

Secondly, Plaintiffs preemptively filed this suit when their non-compliance with their fundamental contractual undertaking was imminent: As of September of 2019, Plaintiffs would fail to begin start-up construction and obtain a certificate of occupancy within two years of Plaintiffs' receiving in excess of $1 million advance payments requisitioned under the parking garage construction contract (City Counterclaim Count I, ¶¶ 9-12). Plaintiffs' building permit for the garage construction was denied; that denial was upheld by the City's Zoning Board of Appeals. Plaintiffs never appealed the denial to the Superior Court under Maine Rules of Civil Procedure 80B. That is the undisputed premise and context of Plaintiffs' initiation of this federal lawsuit. It is a justified assumption that Plaintiffs' obscure and onerous pleading style is deliberate, because despite these final and preclusive adjudicative findings against the Plaintiffs resulting in their failure to obtain a building permit for the site, they filed this suit. Their pleading style is intended to obfuscate the frivolous nature of their case, and confuse or hide all of its inherent deficiencies and illogical inconsistencies.

Next, with this already vexatious pleading as a backdrop, this Court dismissed Plaintiffs' final count in the complaint asserted against the City Manager, Jon Jennings, personally. ECF No. 57. The tortious interference claim asserted by Plaintiffs against Jennings through their original Complaint did not remotely begin to state a claim upon which relief could be granted. In particular, the Complaint, ECF No. 1, generally alleged that Jennings "took a direct and active role in the Project's trajectory" after he was hired by the City as the new City Manager. The Second Amended Complaint elaborates that he met with Plaintiffs for what Plaintiffs self-describe as a "Project meeting," and otherwise involved himself "at a granular level, in City

3

business discussions with the highest levels of City staff, including those directly and intimately involved in the Project." ECF No. 70 ¶ 425. It frankly strains the strictures of Rule 11 of the Federal Rules of Civil Procedure to suggest that this conduct 1) fits the circumstances of a tort, 2) escapes Maine Tort Claims Act consequences, or in the alternative anti-SLAPP statute consequences, and 3) justifies imposing the additional burden on the City and Jennings to defend in the context of an already vexatious and unreasonable lawsuit. Then finally, notably missing were any allegations supporting the conclusion that the communications alluded to or alleged constituted an exhortation that the City breach any contractual obligation to Plaintiffs, any identification of any contractual provision in issue, or how any of that would square with the October of 2015 third amendment of the original contract, signed by Jennings on behalf of the City as City Manager (ECF No. 1-9), ratifying the original contract and keeping its terms in full force and effect.

The Court eventually dismissed Plaintiffs' tortious interference cause of action, stating that Plaintiffs had identified "no statement or threat communicated by Mr. Jennings to any particular City employee or employees during the month of June 2015 *that suggested adverse physical, economic, or emotional consequences to any such individual absent a breach of the PSA*." ECF No. 57 at 5 (emphasis added). The Court went on to "afford Federated the opportunity to amend its complaint . . . to state a claim against Mr. Jennings for tortious interference with a contractual relationship" in light of the deficiencies the Court had described in its Order. *Id.* at 6. Plaintiffs have abused the opportunity afforded them. They add an immaterial variety of redundant and irrelevant allegations, some admittedly speculative, regarding conversations that Jennings may or may not have had with various City employees or officials, and with representatives of Plaintiffs, while still relying solely on conclusory

4

allegations, unconnected from any particular factual pleading. Plaintiffs' second amended complaint is an elaborate but tacit acknowledgment that Plaintiffs' have no claims against Jennings personally.

For instance, Paragraphs 408 through 446 of the Second Amended Complaint are an example of Plaintiffs simply providing highly repetitive and irrelevant details regarding the allegation that Jennings did not formally assume his retained City Manager position until July 13, 2015, but that, prior to that date, when he was *retained* and under contract to do so, he engaged in conversations with City officials and others, including Plaintiffs, regarding Plaintiffs' project in anticipation of the commencement of his term as City Manager. ECF No. 70 at 1-7. These precise allegations were previously made in vaguer but terser fashion in paragraphs 408-417 of the original Complaint. ECF No. 1 at 76-77. As Plaintiffs knew, or objectively should have known, just as their allegations were insufficient to state a claim for tortious interference the first time around, multiplying their number, without altering their substance, would not meet the pleading standards for a tortious interference claim.

The only other allegation or nuance added by the Second Amended Complaint is contained in paragraph 449, where Plaintiffs redundantly state that Jennings was aware that, before he formally took over as City Manager on July 13, 2015, he did not have the "authority" vested in one who holds that position. ECF No. 70 at 8. Even if this allegation were not redundant, it is still hopelessly conclusive – the exact type of allegation or "legal" characterization that fails the federal *Twombly* and *Iqbal* pleading standards. Jennings had undisputed "authority" – i.e., the "authority" that exists as the newly *retained* City Manager, whose term was about to begin in July. It may not be the same exact "authority" as when the term begins in July, but it is some "authority" indeed: it is significant and substantial authority to

meet with Plaintiffs (who apparently called for the meeting), it is authority to meet with City staff, it is authority to begin to become involved "at a granular level, in City business discussions with the highest levels of City staff," ECF No. 70 ¶ 425, as the retained incoming City Manager of the State's largest city. To generally allege, as Plaintiffs' do, that this constitutes "fraud" by Jennings, violates Rule 11 of the Federal Rules of Civil Procedure.

Plaintiffs' in-house general counsel, who was previously counsel of record in this matter (Patrick Venne), is a member of the Maine bar. He was centrally involved as a key representative or agent of the Plaintiffs through the course of much of the underlying events involving the parties' contractual relations. The standards for applying Rule 11 should take these circumstances regarding the nature of the agents of these Plaintiff-litigants into consideration.

In the context of assessing a sanction imposed in the Rule 11 context, the First Circuit noted that a "sanction usually serves two main purposes: deterrence and compensation." *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 (1st Cir. 1992); *see also Cooter & Gellv. Hartmax Corp.*, 496 U.S. 384, 393 (1990) ("the central purpose of Rule 11 is to deter baseless filings . . . Rule 11 imposes a duty on attorneys to certify that they . . . have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose.") (quotation marks omitted). In determining whether Rule 11 sanctions are appropriate, the fact that a party has "consistently made baseless and frivolous filings" that evidenced a "lack of merit" supports a conclusion that such filings are "vexatious and made in bad faith." *See Perry v. Tinkham*, 2018 WL 5284197, at *2 (D. Me. 2018). 28 U.S.C. § 1927 supplements Rule 11, stating that "[a]ny attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by

the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Under the inquiry required by Rule 11 and 28 U.S.C. § 1927, a party's "conduct is to be judged in this inquiry by standards of due diligence and objective reasonableness" not on the basis of the party's subjective intentions in making the filings at issue. *See Beckett v. Maine Med. Ctr.*, 1999 WL 1995210, at *1 (D. Me. 1999). As the First Circuit has explained:

> The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a serious and studied disregard for the orderly process of justice.

*Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir.1990).

In this case, the Plaintiffs responded to this Court's ruling dismissing the attempted pleading against Jennings by utterly ignoring the gist of the ruling, and obfuscating that with a barrage of irrelevant and redundant accusations that still fail to suggest that Jennings made any tortious statements. And then Plaintiffs conclusively call it "fraud." Added to the background circumstances of the case and the suspect premise of its commencement by Plaintiffs, are the undisputed circumstances that not three months into Jennings's term as City Manager, the City and Plaintiffs ratified the original contract and agreed to a third amendment extending the closing date for the Plaintiffs' benefit. ECF No. 1-9. Plaintiffs' refusal to heed the Court's clear dismissal, together with their attempt to hide their failings beneath tens of paragraphs of irrelevant allegations, certainly raises an implication of a subjective desire on their part to waste the Defendants' time and money through vexatious litigation practices. Leaving aside their subjective intentions, however, Plaintiffs' actions are so unreasonably out of line with any objective standard of reasonableness, that the imposition of sanctions is warranted.

7

Pursuant to Fed. R. Civ. P. 11(c)(4), the "sanction imposed . . . must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." 28 U.S.C. § 1927, in turn, authorizes imposition of sanctions in the form of an order that the sanctioned party pay "the excess costs, expenses, and attorneys' fees reasonably incurred" as a result of the sanctioned conduct. In this case, the appropriate sanction is an order that Plaintiffs compensate Defendants for their reasonable attorneys' fees and costs incurred in connection with their motions seeking the dismissal of the First and Second Amended Complaint against Jon Jennings, and in connection with the present motion.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court sanction Plaintiffs for their conduct in filing an original and Second Amended Complaint that unreasonably and vexatiously delayed the progress of this litigation and drove up Defendants' costs in violation of Plaintiffs' obligations pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, such sanction taking the form of an order that Plaintiffs compensate Defendants for their reasonable attorney's fees and costs incurred in responding to the First and Second Amended Complaint on behalf of Jon Jennings personally, including, but not limited to, filing the present motion and the motion seeking dismissal of the First and Second Amended Complaints on Jennings's behalf.

Dated at Portland, Maine this 23rd day of September 2020.

                                                                          NORMAN, HANSON & DeTROY, LLC

/s/ Russell B. Pierce, Jr.
Russell B. Pierce, Jr., Esq.
Attorney for Defendant Jon Jennings

Norman, Hanson & DeTroy, LLC
Two Canal Plaza, P.O. Box 4600
Portland, ME  04112-4600
(207) 774-7000
rpierce@nhdlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2020, I electronically filed **DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1927 WITH INCORPORATED MEMORANDUM OF LAW** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Further, I hereby certify that on August 18, 2020, I served this **DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1927 AND INCORPORATED MEMORANDUM OF LAW,** in accordance with the provisions of Rules 5 and 11(c)(2) of Federal Rules of Civil Procedure, by email and by causing to be posted in U.S. mail, postage prepaid, copies of same for delivery to Plaintiffs' counsel of record: Allison A. Economy, Esq., Rudman Winchell, P.O. Box 1401, Bangor, ME, 04402-1401, and email address aeconomy@rudmanwinchell.com.

/s/ Russell B. Pierce, Jr.
Russell B. Pierce, Jr., Esq.
Attorney for Defendant Jon Jennings

Norman, Hanson & DeTroy, LLC
Two Canal Plaza, P.O. Box 4600
Portland, ME  04112-4600
(207) 774-7000
rpierce@nhdlaw.com

10