UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FEDEQ DV004, LLC, and<br>FEDEQ DV005, LLC,<br><br>    *Plaintiffs*<br><br>v.<br><br>CITY OF PORTLAND and<br>JON P. JENNINGS,<br><br>    *Defendants* | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 2:19-cv-00382-JHR<br>)<br>)<br>)<br>)<br>) |

*MEMORANDUM DECISION AND ORDER ON MOTIONS TO DISMISS,*
*MOTIONS FOR SANCTIONS, MOTION TO COMPEL*[1]

Defendant Jon A. Jennings again moves to dismiss the plaintiffs' sole claim against him, for tortious interference with a contractual relationship, after the plaintiffs availed themselves of an opportunity to amend their complaint. *See* Defendant Jon Jennings's Motion to Dismiss Second Amended Complaint ("Second MTD") (ECF No. 77) at 1-2; Memorandum Decision and Order on Motions to Dismiss ("MTD Decision") (ECF No. 57) at 4-6; Plaintiffs' Second Amended Complaint ("Second Amended Complaint") (ECF No. 70) ¶¶ 408-56. For the reasons that follow, I grant the Second MTD because the amended complaint fails to state a claim upon which relief can be granted, deny cross-motions for sanctions, deny without prejudice a motion to compel discovery filed by the plaintiffs, and direct the parties to meet and confer on the latter.

---

[1] The parties have agreed to have me preside over all proceedings in this action, including the entry of judgment. ECF No. 46.

1

## I. Background

As before, Jennings argues that plaintiffs FEDEQ DV004, LLC ("Federated 04") and FEDEQ DV005, LLC ("Federated 05") (together, "Federated") fail to state a claim, requiring dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), and, in the alternative, that their claim is barred by the notice of claim, statute of limitations, and governmental employee immunity provisions of the Maine Tort Claims Act, 14 M.R.S.A. § 8101 *et seq.* *See* Second MTD at 3-19. Also as before, in the event the Second MTD is denied, Jennings brings a special motion to dismiss the claim against him pursuant to 14 M.R.S.A. § 556, Maine's anti-SLAPP statute. *See* Defendant Jon Jennings's Special Motion to Dismiss the Second Amended Complaint under 14 M.R.S. § 556 ("Second Special MTD") (ECF No. 78) at 1-2.

This time, however, Jennings and the City of Portland ("City") also seek sanctions against the plaintiffs for serving an allegedly frivolous Second Amended Complaint, *see* Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 ("Defendants' Sanctions Motion") (ECF No. 87) at 1-2, and the plaintiffs seek sanctions against the defendants for alleged misconduct in filing the motion for sanctions and against the defendants' counsel and his law firm for an alleged course of misconduct throughout this litigation, including in filing the motion for sanctions, *see* Plaintiffs' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 ("Plaintiffs' Sanctions Motion/Defendants") (ECF No. 95) at 1-2; Motion for Sanctions Pursuant to 28 U.S.C. § 1927 and This Court's Inherent Powers ("Plaintiffs' Sanctions Motion/Counsel") (ECF No. 96) at 3-4. Finally, the plaintiffs move to compel discovery in response to their first request for production of documents. *See* Motion to Compel Discovery in Response to Plaintiffs' First Request for Production of Documents ("Motion to Compel") (ECF No. 83) at 1.

As explained herein, I dismiss the plaintiffs' tortious interference claim against Jennings (Count VII) with prejudice,[2] deem the Second Special MTD moot, deny all three motions for sanctions, deny without prejudice the Motion to Compel, and direct that the parties meet and confer in good faith pursuant to Local Rule 26(b) concerning the categories of relief requested in the Motion to Compel and file on CM/ECF, no later than February 12, 2021, a status report identifying the specific categories of relief, if any, remaining in dispute and, with respect to each such category, detailing the specific requests for production of documents implicated and providing a concise description of the dispute(s).[3]

## II.  Second Motion to Dismiss Claim Against Jennings

### A.  Applicable Legal Standard

The Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] The plaintiffs renumbered former Count VIII against Jennings to Count VII to correct a typographical error.  *See* Second Amended Complaint at 1, ¶ 2.

[3] Jennings also requests, in passing, that the court direct entry of final judgment in his favor pursuant to Federal Rule of Civil Procedure 54(b).  *See* Second MTD at 19.  Yet, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (citations omitted).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011).  Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Id.* (citation and internal quotation marks omitted).

The plaintiffs argue that Jennings' second motion to dismiss should be treated as a motion for summary judgment because Jennings (i) relies on a declaration of Danielle West-Chuhta that includes, as an exhibit, a copy of his employment agreement with the City of Portland dated June 5, 2015, and (ii) introduces facts outside the pleadings – namely, the execution and ratification dates of that agreement.  *See* Plaintiffs' Opposition to Defendant Jon Jennings's Motion to Dismiss Second Amended Complaint ("Opposition/Second MTD") (ECF No. 79) at 8-9.  However, the plaintiffs themselves describe that agreement, including its execution and ratification dates, in their Second Amended Complaint and attach a copy thereto.  *See* Second Amended Complaint ¶¶ 411-17 & Exh. B (ECF No. 70-2) thereto.  The Jennings employment agreement, hence, fits the "narrow exception" for "documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Alt. Energy*, 267 F.3d at 33 (citation and internal quotation marks omitted).

## B. Factual Background

The Second Amended Complaint includes the following allegations:[4]

Throughout the month of June 2015, the City was being managed on an interim basis by its police chief, Michael Sauschuck. Second Amended Complaint ¶ 408. At the same time, the City was concluding its search for a new permanent City manager. *Id*. ¶ 409. On or about June 5, 2015, the City made an offer of employment to Jennings, a self-described experienced developer and business partner in the Portland-based Forefront at Thompson's Point real estate project. *Id*. ¶ 410-11. The Forefront project was a direct competitor of a multi-tower urban development project planned for the City's Bayside neighborhood consisting of parking, retail, housing, and other public benefits (the "Project"), which the City had selected Federated to acquire and develop. *Id*. ¶ 410; Complaint (ECF No. 1) ¶¶ 9-16.[5] Incident thereto, on June 23, 2011, the City and Federated had entered into a certain purchase and sale agreement related to four parcels and approximately 3.25 acres (the "PSA"). Complaint ¶ 43.

The City's offer of employment to Jennings was expressly ineffective until review and approval by at least five members of the City Council at a duly noticed City Council meeting. Second Amended Complaint ¶ 413. Such review and approval did not occur until at least June 15, 2015. *Id*. ¶ 414. Jennings' tenure as a City employee did not commence until July 13, 2015. *Id*. ¶ 416.

---

[4] The First Circuit has instructed that, in reviewing a complaint for sufficiency pursuant to Rule 12(b)(6), a court "should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation and internal punctuation omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id*. "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility." *Id*. (citation and internal quotation marks omitted).

[5] The Second Amended Complaint incorporates by reference paragraphs 1 through 407 of the Amended Complaint and all corresponding exhibits. *See* Second Amended Complaint at 1, ¶ 1. The Amended Complaint, in turn, incorporated by reference paragraphs 1, 2, and 4 through 418 of the Complaint. *See* Plaintiff's Amended Complaint (ECF No. 51) ¶¶ 1, 3.

In the spring of 2015, following the City's March 3, 2015, approval of a second version of the Project, Federated inquired whether it could administratively amend a part of the 2015 approval to include hospitality use while still providing hundreds of residential units. *Id*. ¶¶ 26, 160. Rather than debating Federated on the merits of its position, the City abruptly declared, on or about June 8, 2015 (the "June 8th Communication") that the PSA was no longer in force or effect due to an alleged expiration. *Id*. ¶ 163. The City's economic development director advised Federated that before the City would entertain further discussions, he and the City's interim manager, Michael Sauschuck, needed to update the City Council for guidance. *Id*. ¶ 165. Federated repeatedly asked for clarification from the City Council and senior City officials. *Id*. ¶ 166. The City refused to explain its position until it delivered formal correspondence late in the day on Friday, June 19, 2015 (the "June 19th Communication"), leading Federated to reasonably conclude it was a means of preventing further discussion of non-housing project changes. *Id*. ¶ 167.

As of the time of the June 8th Communication, which occurred just three days after Jennings' initial and contingent June 5 offer of employment by the City, and as of the time of the June 19th Communication, Jennings was still an employee of the City of South Portland, Maine. Second Amended Complaint ¶ 418.

Well in advance of the date when he became a City employee, Jennings was already involved, at a granular level, in City business discussions with the highest levels of City staff, including those directly and intimately involved with the Project. *Id*. ¶ 425. In June 2015, prior to the June 19th Communication, Jennings met with Federated at its request to discuss the Project. *Id*. ¶¶ 427-28. Federated provided a detailed overview of the Project's status and its interest in exploring a change of use and, at Jennings' request, verbally provided him with a non-exhaustive

list of City employees who had been involved in discussions regarding the change of use. *Id*. ¶¶ 429, 433-34. Jennings indicated that he was going to reach out with the purpose of directing such individuals without delay regarding the Project. *Id*. ¶ 435. Jennings also asked for copies of all Project contracts with the City, which Federated provided after the meeting but prior to Jennings' employment with the City, *id*. ¶¶ 431-32, and copies of correspondence Federated had recently sent to the City Council and City staff regarding the Project, which Federated provided, *id*. ¶¶ 436, 438. Jennings indicated that he had a meeting with City staff during which he would address the Project at 1:00 p.m. the same day. *Id*. ¶ 437. On information and belief, he did so. *Id*. ¶ 438.

In early June 2015, Greg Mitchell, the City's director of economic development and the communicator of the June 8th Communication and author of the June 19th Communication, advised Federated that he was seeking direction from the City Council, the body responsible for offering Jennings a position of City employment, ratifying the offer, and later overseeing Jennings regarding the Project, rather than from Sauschuck, the acting City manager. *Id*. ¶ 439; *see also* Complaint ¶ 246. On June 17, 2015, more than a week after the City issued the June 8th Communication declaring the PSA expired, a Federated representative met with City Councilor Edward Suslovic and learned that the City Council by that date had not been contacted by City staff regarding the PSA or related Project matters. Second Amended Complaint ¶ 440[a].[6]

On or about June 9, 2015, Federated asked to meet with Sauschuck to discuss the Project and the City's June 8th Communication. *Id*. ¶ 440[b]. When Federated finally met with Sauschuck on or about June 16, 2015, he confirmed that Jennings had previously contacted him regarding the Project and that he had spoken to Jennings regarding Federated and the Project. *Id*. ¶ 441. Three

---

[6] Because two consecutive paragraphs are numbered 440, I have referred to them as paragraphs 440[a] and 440[b].

days later, and nearly a month before the commencement of Jennings' employment, when Sauschuck emailed Federated the June 19th Communication drafted by Greg Mitchell and effectively repudiated the PSA, he provided Jennings a direct carbon copy of the correspondence. *Id*. ¶ 442.

On June 29, 2015, two weeks before his City employment commenced, Jennings committed in writing to providing Federated with an update "soon" on behalf of the City regarding the Project. *Id*. ¶ 443. Jennings provided Mitchell a direct carbon copy of that correspondence. *Id*. ¶ 444. On July 1, 2015, Mitchell emailed a Federated representative and stated, "Jon Jennings asked that I follow up with you." *Id*. ¶ 445. Mitchell would have directly reported to Jennings had Jennings been City manager during the relevant time period. *Id*. ¶ 448.

Between the dates of June 1, 2015, and July 13, 2015, it was common knowledge among City staff that Jennings likely was the next City manager, in which capacity he would be responsible for overseeing both Sauschuck and Mitchell as direct reports. *Id*. ¶ 455. As seasoned municipal employees and senior City staff members, both Mitchell and Sauschuck were or should have been aware of the authority that the City manager held over them in the hierarchy of municipal administration. *Id*. ¶ 452. Jennings was aware at all relevant times that his employment with the City did not begin until July 13, 2015. *Id*. ¶¶ 446, 449.

Upon information and belief, Jennings directed City staff to declare the PSA expired and/or to otherwise refrain from engaging Federated with respect to the PSA or the Project prior to July 13, 2015. *Id*. ¶ 451.

### C. Discussion

"A claim under Maine law for tortious interference with prospective economic advantage requires a plaintiff to prove the following elements: "'(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage

8

through fraud or intimidation; and (3) that such interference proximately caused damages.'" *Old Town Util. & Tech. Park, LLC v. Consol. Edison, Sols., Inc.*, 2:19-cv-00029-JDL, 2019 WL 4784603, at *9 (D. Me. Sept. 30, 2019) (quoting *Rutland v. Mullen*, 798 A.2d 1104, 1110 (Me. 2002) (footnotes omitted)).  In the prior version of their complaint, the plaintiffs alleged that Jennings interfered with their contract with the City by means of intimidation, *see* Complaint ¶ 418; however, they now allege that he did so by means of both fraud and intimidation, *see* Second Amended Complaint ¶ 456 ("But for Mr. Jennings's interference with the Project prior to the commencement of his role as an agent for the City, which occurred in a fraudulent, intimidating and coercive manner, the PSA would have continued in force and effect.").

"The five elements necessary to establish fraud are (i) a false representation (ii) of a material fact, (iii) with knowledge of its falsity or reckless disregard for whether it is true or false, (iv) for the purpose of inducing another to act in reliance on the representation, and (v) the other justifiably relies to her detriment." *Howell v. Advantage Payroll Servs., Inc.*, Docket No. 2:16-cv-438-NT, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017).  "Federal Rule of Civil Procedure 9(b) requires that an allegation of fraud state the facts of the fraud with particularity, meaning the time, place and content of an alleged false representation[,]" although "[t]he plaintiff may allege the defendant's intent or knowledge generally." *Id*. (citations and internal quotation marks omitted).

The plaintiffs fall short of meeting this standard.  They *infer* that such specific false representations were made, alleging:

1. "By virtue of his many and repeated conversations with City staff regarding the Project and the PSA, including those staff members involved in both the June 8th Communication and the June 19th Communication, throughout June and early July 2015, . . . wherein he held himself out to be an agent of the City, committed to taking control of the Project's trajectory by

meeting and discussing with staff, and reviewed the merits of the parties' legal positions, Mr. Jennings falsely represented himself as a duly authorized figure of authority with regard to his status as City Manager." Second Amended Complaint ¶ 447.

2. "By virtue of his request for City staff members' names concerning the Project, and for Project contracts and legal positions regarding the Project, coupled with his commitment to getting involved at a staff level prior to his commencement of employment, Mr. Jennings made the aforementioned false representations, which he was fully aware (or should have been fully aware) were false, for the express purpose of inducing City staff to act or refrain from acting with regard to the Project, prior to July 13, 2015, including the City's repudiation of the PSA." *Id*. ¶ 450.

However, they identify no specific false statements made by Jennings at specific dates and times to specific people. The plaintiffs, hence, fail to state a claim for tortious interference with a contract predicated on a theory of fraud.

With respect to the plaintiffs' claim of tortious interference predicated on intimidation, "[u]nder the well-marked boundaries for this tort in Maine, 'A person engages in intimidation when that person: (1) communicates a statement [or threat] to a third person; (2) that suggests adverse physical, economic, or emotional consequences to the third person; (3) for the purpose of inducing the third person to act [or fail to act] regarding the plaintiff; and (4) the third person acts based on the statement or threat, damaging the plaintiff.'" *St. Pierre v. E. Me. Med. Ctr.*, No. 1:12-CV-0265-NT, 2013 WL 5503146, at *3 (D. Me. Sept. 30, 2013) (quoting D. Alexander, *Maine Jury Instruction Manual* § 7-33 (4th ed. 2008) (brackets in original)).

The plaintiffs allege, in relevant part, that, prior to the start of his City employment, "Mr. Jennings directed City staff to declare the PSA expired and/or directed City staff to otherwise

refrain from engaging Federated with respect to the PSA, or the Project," Second Amended Complaint ¶ 451, and that, "[a]s seasoned municipal employees and senior staff members with the City, both Mr. Mitchell and Mr. Sauschuck were or should have been acutely aware of the authority that the position of City Manager held over them in the hierarchy of municipal administration[,]" *id*. ¶ 452. "Accordingly," the plaintiffs reason, "any tacit suggestion by Mr. Jennings, logical inferences by City staff about how he would prefer them to proceed, or recommendations by Mr. Jennings regarding the Project would have intimidated City staff members to act according to his wishes." *Id*. ¶ 453.

Yet, "[i]ntimidation in this context means coercion, extortion, or other conduct that makes it clear to the party with which the plaintiff had contracted that the only manner in which that party could avail itself of a particular benefit of working with defendant would be to breach its contract with plaintiff." *Howell*, 2017 WL 782881, at *6 (citation and internal punctuation omitted). The plaintiffs identify no statement or threat communicated by Jennings to any particular City employee or employees prior to the start of his employment on July 13, 2015, that suggested adverse physical, economic, or emotional consequences to any such individual absent a breach of the PSA.

The plaintiffs having fallen short in their second attempt to state a claim of tortious interference against Jennings, that claim (Count VII) is dismissed with prejudice.

### III.  Motions for Sanctions

The defendants' motion for sanctions against the plaintiffs, predicated on Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, *see* Defendants' Sanctions Motion at 1-2, and the plaintiffs' motions for sanctions against the defendants, predicated on the same authorities, and for sanctions against the defendants' counsel and his law firm, predicated on 28 U.S.C. § 1927 and

the court's inherent authority, *see* Plaintiffs' Sanctions Motion/Defendants at 1-2; Plaintiffs' Sanctions Motion/Counsel, at 3-4, are denied.

"Civil Rule 11 is not a strict liability provision – a filer must, at the very least, be culpably careless to get whacked with a sanctions order." *Eldridge v. Gordon Brothers Grp., L.L.C.*, 863 F.3d 66, 88 (1st Cir. 2017) (citations and internal quotation marks omitted). "[B]ecause what is existing law or a nonfrivolous argument for extension is sometimes debatable, even a poorly supported and sure to fail motion may not be sanctionable: Counsel every day file motions that are hopeless, just as they make hopeless objections in trials and hopeless arguments to the judge." *Id*. (citations and internal quotation marks omitted).

"Section 1927 authorizes the imposition of sanctions against an attorney who . . . multiplies the proceedings in any case unreasonably and vexatiously." *Lamboy-Ortiz v. Ortiz-Vélez*, 630 F.3d 228, 245 (1st Cir. 2010) (citation and internal quotation marks omitted). "[S]ection 1927 does not apply to garden-variety carelessness or even incompetence, but instead requires that the attorney's actions evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court." *Id*. at 245-46 (citation and internal punctuation omitted).

The conduct of the parties and their counsel does not rise to these levels. Though unmeritorious, neither the plaintiffs' amendment of their complaint, undertaken with the court's express permission, nor the defendants' motion for sanctions fairly can be characterized as having been interposed for an improper purpose or reflecting culpable carelessness or disregard of the orderly processes of the court. This case has been hard-fought but well-lawyered on both sides. I, therefore, decline to impose sanctions at this time.

### IV. Motion to Compel Discovery

The plaintiffs file a motion to compel the production of documents, seeking four categories of substantive relief as well as their reasonable expenses, including attorney fees, incurred in the filing of the motion. *See* Motion to Compel at 12-13. The parties have not engaged in good-faith efforts pursuant to Local Rule 26(b) to resolve disputes concerning any of those four categories. *See* Defendants' Opposition to Plaintiffs' Motion to Compel Discovery in Response to Plaintiffs' First Request for Production of Documents ("MTC Opposition") (ECF No. 89) at 6 n.2; Plaintiffs' Reply Memorandum in Support of Motion to Compel Discovery in Response to Plaintiffs' First Request for Production of Documents ("MTC Reply") (ECF No. 93) at 3-4.

The plaintiffs contend that no Local Rule 26(b) conference was required in view of my grant of permission to file a motion to compel if the defendants failed to complete their document production by September 4, 2020. *See* MTC Reply at 3-4; Orders (ECF Nos. 68, 76). The defendants maintain that they completed their document production as of that deadline and that the instant requests for relief, even to the extent they bear on the completeness of that production, are collateral discovery disputes subject to the requirements of Local Rule 26(b). *See* MTC Opposition at 6 n.2. The defendants are correct.

Therefore, I direct the parties to meet and confer in good faith pursuant to Local Rule 26(b) regarding the four categories of relief set forth in the Motion to Compel and to file on CM/ECF, no later than February 12, 2021, a status report identifying the specific categories of relief, if any, remaining in dispute and, with respect to each such category, detailing the specific requests for production of documents implicated and providing a concise description of the dispute(s).[7] Should any dispute(s) remain, I anticipate convening a teleconference with the parties to resolve them.

---

[7] While I do not foreclose discussion of any category of requested relief, I note that the parties seemingly have no remaining disagreement as to some of them. *See* MTC Opposition at 7-8; MTC Reply at 5.

## V.  Conclusion

For the foregoing reasons, I **GRANT** the Second MTD, **DISMISS** the plaintiffs' tortious interference claim against Jon Jennings (Count VII) with prejudice, **DEEM** the Second Special MTD **MOOT**, **DENY** the Defendants' Sanctions Motion, the Plaintiffs' Sanctions Motion/Defendants, and the Plaintiffs' Sanctions Motion/Counsel, and **DENY** without prejudice the plaintiff's Motion to Compel and **DIRECT** that the parties meet and confer in good faith pursuant to Local Rule 26(b) regarding the four categories of relief set forth in the Motion to Compel and file on CM/ECF, no later than February 12, 2021, a status report identifying the specific categories of relief, if any, remaining in dispute and, with respect to each such category, detailing the specific requests for production of documents implicated and providing a concise description of the dispute(s).

Dated this 22nd day of January, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge