## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **FEDEQ DV004, LLC**, and **FEDEQ DV005, LLC**, Florida limited liability companies ] ] ] Plaintiffs, ] ] v. ] ] **CITY OF PORTLAND**, a Maine body ] politic and corporate, ] ] and ] ] **JON. P. JENNINGS**, an individual, ] ] Defendants. ] | Case No.: **2:19-CV-00382-JHR** |

**FEDERATED'S CORRECTED[1] MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION AND ORDER ON MOTIONS TO DISMISS, MOTIONS FOR SANTIONS, MOTION TO COMPEL, OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND, WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, FEDEQ DV004, LLC and FEDEQ DV005, LLC (together, "*Plaintiffs*" or "*Federated*"), hereby move for reconsideration of this Court's Memorandum Decision and Order on Motions to Dismiss, Motions for Sanctions, Motion to Compel (ECF No. 104) (the "*Order*"), pursuant to Maine District Court Local Rule 7(f) and F.R. Civ. P. 15(a)(2), to the extent and on the grounds set forth below:

### I.     Introduction.

On January 22, 2021 this Court entered the Order, which dismissed Count VII of Plaintiffs' Second Amended Complaint (ECF No. 70) (the "*Second Amended Complaint*"), the

---

[1] Plaintiffs file this "corrected" Motion to rectify a date typo inadvertently specifying the filing date hereof was February 6, 2021 as opposed to February 5, 2021.  No changes other than two instances of a corrected date reference on the certification page hereof have been made herein as compared to Plaintiffs' initial motion on this topic.

1

sole count thereof directed to Defendant Jon P. Jennings ("*Jennings*"). ECF No. 104 at 1. That count alleged tortious interference by Mr. Jennings with Plaintiffs' contractual relationship with the City of Portland ("*City*") and cited as bases therefor that (i) Mr. Jennings, acting as a yet-to-be hired City employee, with an atypical municipal official background including experience as a developer with a financial stake in a proximately located real estate development project directly competing with Plaintiffs' (*Id.* at ¶ 410), took it upon himself to (ii) actively understand who the key City officials involved in the Plaintiffs' project were (*Id.* at. 70 ¶¶ 419, 426, 433-434) , and (iii) connect with such individuals (*Id.* at 70 ¶ 435, 437), including the City's then-chief executive, and that (iii) as a direct result thereof the City invalidated Plaintiffs' contracts with the City, without explanation, via email on which Mr. Jennings was copied (*Id.* at ¶ 456). In addition, Plaintiffs have alleged that Greg Mitchell, who was the City's primary point of contact for Plaintiffs' agreements with the City, reached out to Plaintiffs regarding the City's termination of the parties' agreement *at the express direction of Mr. Jennings*. *Id.* at ¶ 445. Furthermore, Plaintiffs have alleged that the City's interim manager, and the author of the correspondence invalidating Plaintiffs contracts, were *both* directly on contact with Mr. Jennings concerning Plaintiffs and their agreements with the City. *Id.* at ¶¶ 439, 441.

While Mr. Jennings alleged in his Motion to Dismiss Second Amended Complaint (ECF No. 77) that Plaintiffs failed to support their allegation that the "PSA" would have remained in force or effect absent Mr. Jennings's interference, since the PSA was later reinstated (*Id.* at 16-17), he failed to allege that, as Plaintiffs contend, the PSA was not invalidated at all[2]. And this is

---

[2] This is of critical importance, because the parties' contract remained in a state of challenged termination for at least four months, and moreover that time was spread across Maine's exceptionally short construction season (June – October, 2015).

2

the *sole* basis upon which Mr. Jennings requested dismissal *with prejudice*, claiming the Plaintiffs' claims against Mr. Jennings were nothing but a "litigation tactic". *Id.* at 17.

Finally, because of Mr. Jennings's two special motions to dismiss (ECF No. 26 & 78), discovery with respect to his role in this litigation has been disallowed virtually from the outset.[3]

Within the afore-described context, this Court then found, in the Order, that Plaintiffs failed to meet the standard established by Federal Rule of Civil Procedure 9(b), which requires allegations of fraud state the facts of such with particularity, including the time, place and content of the alleged false representations. ECF No. 104 at 9.  The Court further found that, with respect to the intimidation element of Plaintiffs' claim against Mr. Jennings, they had failed to identify any specific statement or threat communicated by Jennings to any particular City employee or employees prior to the start of his employment. *Id.* at 11.

## II.     Legal Standard.

A motion to reconsider "an interlocutory[4] order. . . .shall demonstrate that the order was based on a manifest error of fact or law and shall be filed within 14 days from the date of the order. . . .". Local Rule 7(f).

Further, this Court should freely grant leave to amend when justice so requires. F.R. Civ. P. 15(a)(2).  Courts have discretion to deny leave to amend if there is undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; or futility of the proposed amendment. *Glenwood Farms, Inc. v. Ivey*, 228 F.R.D. 47, 49 (D. Me. 2005) (citing *Forman v. Davis*, 371 U.S. 178,182 (1962)).

---

[3] Pursuant to 14 M.R.S. § 556, discovery is stayed with respect to any claim for which a special motion to dismiss thereunder is filed.
[4] In the Order, this Court refused to enter a final judgment in Mr. Jennings's favor. ECF No. 104 at n.2.  Further, the Federal Rules of Civil Procedure state that unless the Court clarifies its Order was a final order, it's not a final order when multiple parties exist.  F.R. Civ. P. 54(b).

### III.  Argument.

This Motion has been filed within 14 days of the Court's Order and is thus timely filed. Further, for the reasons discussed in the Introduction to this Motion, which are elaborated upon below, the Order was based on manifest errors of fact to the extent it dismissed Count VII. Such Count should not have been dismissed at all, particularly not *with prejudice*.

Plaintiffs contend the following:

1. That, contrary to the Order, Plaintiffs did, in fact, meet the pleading standards of F.R. Civ. P. 9(b) concerning allegations of fraud, by alleging the time (June 2015), place (a meeting with City of Portland staff members, which is sufficient to indicate the natural place of business for City staff, i.e., Portland City Hall, a meeting which was detailed at Cia Café in the City of South Portland), and content (directions to City staff specifically concerning Plaintiffs' project); and

2. That, contrary to the Order, Plaintiffs did, in fact, allege with respect to their claims of intimidation that Mr. Jennings communicated statements (a directive to repudiate the PSA and discontinue working with Federated) to various third parties acting as representatives for the City as a party with which Plaintiffs contracted (i.e., the list of City staff names provided to Mr. Jennings by Plaintiffs, the City's interim chief executive, Police Chief Sauschuck, and the City's Economic Development Director, Greg Mitchell – who was also the author of the communication directly terminating Plaintiffs' contract with the City) which suggested adverse economic consequences to such party (specifically, Plaintiffs allege that Mr. Jennings inappropriately used his status as "incoming" City Manager to exert undue influence over the City staff he directed to terminate the PSA of the sort *inherent* in any employment supervisor's

4

role ), for the purpose of inducing those parties to act with respect to the Plaintiffs (again, to repudiate the PSA). Plaintiffs have further alleged that such third parties did, in fact, act at the behest of Mr. Jennings, namely by terminating the parties' PSA—resulting not only in "interference" with but complete obliteration of Plaintiffs' contractual rights.

In its Order, the Court acknowledged many of the foregoing facts, but reasoned that intimidation had not been properly alleged because, under Maine law, it also requires coercion, extortion or other conduct that makes it clear to the party with which the plaintiff contracted, here the City, that the only manner in which such party could avail itself of a particular benefit of working with Mr. Jennings was to breach its contract with the Plaintiffs. ECF No. 104 at 11, citing *Howell v. Advantage Payroll Servs., Inc.*, Docket No. 2:16-cv-438-NT, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017).

This case is entirely distinct from *Howell*, where the plaintiff merely alleged, in conclusory fashion, that the defendant "was aware of the contracts referenced above, and interfered with such contracts through unlawful or improper means". *Id*. To the contrary, Plaintiffs have not only alleged that Mr. Jennings made it "clear" to City staff members, both named and unnamed alike, that the only manner in which such party could avail itself of a particular benefit of working with Mr. Jennings (i.e., employment) was to breach its contract with the Plaintiffs, they additionally explained exactly *how* he did so (i.e., by utilizing the fact that for all intents and purposes he was or imminently would become their employment supervisor, meaning they should "do as he directs", as any employee naturally would) (ECF No. 70 at 9). *Howell* is not limited to overt coercion or extortion, but contemplates "other conduct" as well. Plaintiffs contend the foregoing naturally falls within such category.

5

In short, the City staff members who invalidated Plaintiffs' contract with the City did so without any input from the City Council, *three days after Mr. Jennings – a competing real estate developer – was made an offer of employment*, and at the same time as Mr. Jennings was routinely and directly involving himself in the inner workings of City affairs, including directing the *very same* staff members who invalidated the contract *with respect to the contract*. The foregoing occurred at the same time as Mr. Jennings not only advised Plaintiffs, but committed to them, that he would direct staff concerning the Plaintiffs' project. All of the foregoing facts are detailed in the Second Amended Complaint. This case, again, is a far cry factually from *Howell*.

Federated has presented facts sufficient to exceed the mere "labels and conclusions" concern addressed in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The foregoing facts clearly provide the grounds of Plaintiffs' entitlement to relief: Mr. Jennings, an individual motivated by financial gain to thwart Plaintiffs' project, who communicated with the City about such project, and its contracts, as a private individual, before becoming a City employee, directed staff to invalidate the Parties' PSA, and the City so invalidated the contract at issue, virtually immediately after Mr. Jennings first became a serious contender for the role of City Manager. This pattern of events could not be clearer as to motive, intent, or the means by which the former were served. Moreover, the very same City staff members who invalidated the PSA themselves have confirmed, as alleged and as documented, that they discussed the Plaintiffs' project and contracts with Mr. Jennings prior to his commencement as City Manager. This is enough to meet the standards required by applicable precedent. *Id*. Based on the details elaborated upon herein, the Court can certainly "draw the reasonable inference that [Mr. Jennings] is liable for the

6

misconduct alleged", and that is all that is required to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To the extent the Court desires greater particularity than that offered in the Second Amended Complaint as elaborated upon herein, however, Plaintiffs easily could have provided such information had their attempts at discovery not been nixed from the outset. Instead, Plaintiffs were deprived of an ability they otherwise would have had to develop the facts necessary to flesh out the broad framework of wrongdoing they concisely and specifically alleged in their Second Amended Complaint. At a minimum, therefore, Plaintiffs' Second Amended Complaint should not have been dismissed ***with prejudice.***

Plaintiffs' case against the City continues, and discovery has been propounded. Should Plaintiffs discovery additional facts relevant to their claim against Mr. Jennings by the conclusion of discovery, it would be unjust to deprive them from refiling their complaint against Mr. Jennings merely because Plaintiffs could not provide detail at the stage of their initial pleading greater than that set forth in the Second Amended Complaint – which Plaintiffs again contend is more than required by applicable rules and governing precedent. Plaintiffs' primary objective is to preserve their right to reinstitute their action against Mr. Jennings should additional facts surface warranting the same. Mr. Jennings has gone to virtually no lengths to defend this suit – instead, he is defended by the City's counsel, and his participation in this suit has been next to nonexistent. Accordingly, permitting Plaintiffs to refile Count VII at such time as additional facts surface of the sort this Court would accept, assuming it does not reconsider dismissal in the entirety, would have no meaningfully adverse impact on Mr. Jennings. In other words, few of the reasons typically underlying a dismissal with prejudice are present here.

7

In the alternative, Plaintiffs contend that they should be granted leave to amend their Second Amended Complaint for a second time with respect to Count VII.  There has been no bad faith involved in Plaintiffs' actions to date, nor have Plaintiffs been dilatory in their actions (Plaintiffs have timely filed this Motion).  Moreover, while Plaintiffs may have failed on *one* occasion to satisfactorily amend their initial Complaint with regard to Mr. Jennings, they have not "repeated[ly]" done so, no undue prejudice would arise for Mr. Jennings from a further amendment, and a further amendment would not be futile; as such, leave should be granted for an amendment in the event this Court denies Plaintiffs' primary request to reconsider its dismissal with prejudice, as the standard for *not* doing so has not been met.  *Farms, Inc.*, 228 F.R.D. 47, 49 (D. Me. 2005).

## Conclusion.

While discovery would undoubtedly reveal facts describing the alleged misconduct with greater particularity, Federated contends it has met the applicable rules and precedent governing its pleading against Mr. Jennings, and that on that basis Count VII should not have been dismissed at all, and much less with prejudice.  Based on the reasonable inferences which this Court can draw from the allegations Plaintiffs have asserted, Plaintiffs contend it would be a manifest error of both law and fact to dismiss Count VII with preclusive effect on future refilings.

WHEREFORE, Plaintiffs, respectfully request that this Court review and grant this Motion for the reasons set forth above, or in the alternative grant Plaintiffs leave to amend their Second Amended Complaint an additional time at such time as facts of the sort this Court would deem appropriate are discovered.

Dated at Gorham, Maine this 5th day of February 2021.

/s/ Patrick Venne
Patrick Venne, Esq.
Attorney for Plaintiffs
42 Barnfield Lane
Gorham, Maine 04038
(207) 274-1298
patrickjvenne@federatedcompanies.com

**CERTIFICATE OF SERVICE**

I, Patrick Venne, hereby certify that on the 5th day of February, 2021, I filed this Motion for Reconsideration with the Clerk of the United States District Court using the CM/ECF system, which will automatically send notification electronically to the registered participants.

/s/ Patrick Venne
Patrick Venne , Esq.
Attorney for Plaintiffs
42 Barnfield Lane
Gorham, Maine 04038
(207) 274-1298
patrickjvenne@federatedcompanies.