UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FEDEQ DV004, LLC, et al., | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) No. 2:19-cv-00382-JHR |
| | ) |
| CITY OF PORTLAND et al., | ) |
| | ) |
| Defendants | ) |

### MEMORANDUM DECISION AND ORDER ON PLAINTIFFS' MOTIONS TO DISMISS COUNTERCLAIM, RECONSIDER RULING[1]

Plaintiffs FEDEQ DV004, LLC, and FEDEQ DV005, LLC ("Federated" or "the plaintiffs") move to dismiss the defendant City of Portland's ("City's") counterclaim against them pursuant to 14 M.R.S. § 556, Maine's Anti-SLAPP statute, *see* Federated's Special Motion to Dismiss City's Counterclaim Under 14 M.R.S. § 556 ("Plaintiffs' Anti-SLAPP Motion") (ECF No. 106), and for reconsideration of my order dismissing their claim against defendant Jon P. Jennings or, in the alternative, for leave to amend that claim, *see* Federated's Corrected Motion for Reconsideration of Memorandum Decision and Order on Motions to Dismiss . . . or, in the Alternative, for Leave to Amend ("Plaintiffs' Motion for Reconsideration") (ECF No. 112). For the reasons that follow, I deny both motions.

### I. Procedural Background

The plaintiffs filed their original complaint on August 16, 2019, alleging that they invested "nearly a decade and millions upon millions of dollars in vain developing and pursuing plans for a vibrant mixed-use development project" in the City's Bayside neighborhood as a result of the

---

[1] The parties have agreed to have me preside over all proceedings in this action, including the entry of judgment. ECF No. 46.

1

City's repudiation of "the applicable agreements between it and Federated as an obvious act of seller's remorse and in an express attempt to retake valuable real and intellectual property from Federated and extinguish its remaining rights in the same." Complaint (ECF No. 1) at 1-3. They sued the City for breach of contract, fraudulent inducement and misrepresentation, and breach of the implied covenant of good faith and fair dealing, and Jennings for tortious interference with that contractual relationship prior to the official commencement of his employment as City manager. *Id*. ¶¶ 306-418.

The City answered on October 8, 2019, *see* ECF No. 14, amending its answer on October 29, 2019, to add a counterclaim against the plaintiffs for breach of the parties' agreements, *see* Counterclaim Against Counterclaim Defendants FEDEQ DV004 LLC and FEDEQ DV005 LLC ("Counterclaim"), commencing on page 72 of Defendant City of Portland's Amended Answer to Complaint, Affirmative Defenses, Jury Trial Demand, and Counterclaim Against Counterclaim Defendants FEDEQ DV004 LLC and FEDEQ DV005 LLC (ECF No. 19).

On October 8, 2019, Jennings filed a motion to dismiss the plaintiffs' claim against him on the alternative bases of failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to comply with the Maine Tort Claims Act (MTCA). *See* ECF No. 13. On November 12, 2019, he also filed an alternative special motion to dismiss the plaintiffs' claim against him pursuant to Maine's Anti-SLAPP statute. *See* ECF No. 26.

On November 19, 2019, the plaintiffs filed a motion to dismiss the Counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Plaintiffs' Motion to Dismiss City of Portland's Counterclaim (ECF No. 31) at 1.

On July 5, 2020, I (i) granted Jennings' Rule 12(b)(6) motion to dismiss the plaintiffs' claim against him but directed that the plaintiffs file an amended complaint no later than July 27,

2020, failing which that claim would be dismissed, (ii) denied the plaintiffs' motion to dismiss the Counterclaim, and (iii) deemed Jennings' Anti-SLAPP motion moot. *See* Memorandum Decision and Order on Motions to Dismiss ("July 5, 2020, Decision") (ECF No. 57) at 21.

On July 16, 2020, I resolved a dispute over the timeliness of the City's response to the plaintiffs' request for the production of documents, ordering the City to complete its document production on a rolling basis, absent extraordinary circumstances, by August 5, 2020. *See* ECF No. 68. The City's deadline to complete document production ultimately was extended to September 4, 2020, when I found that the showing of extraordinary circumstances had been made. *See* ECF No. 76.

On July 27, 2020, as permitted by my July 5, 2020, Decision, the plaintiffs filed a Second Amended Complaint revising their claim against Jennings, *see* ECF No. 70, touching off a fresh round of motion practice. On August 17, 2020, Jennings filed a second motion to dismiss the plaintiffs' claim against him for failure to state a claim or comply with the MTCA and a second motion to dismiss, in the alternative, pursuant to Maine's Anti-SLAPP statute. *See* ECF Nos. 77-78. All parties also filed motions for sanctions. *See* ECF Nos. 87, 95-96.

On January 22, 2021, I granted Jennings' second motion to dismiss the plaintiffs' claim against him for failure to state a claim, dismissing that claim with prejudice, deemed Jennings' second Anti-SLAPP motion moot, denied all motions for sanctions, and denied without prejudice a motion by the plaintiffs to compel discovery from the City, directing that those parties meet and confer. *See* Memorandum Decision and Order on Motions to Dismiss, Motions for Sanctions, Motion to Compel ("January 22, 2021, Decision") (ECF No. 104) at 14.

On January 26, 2021, Patrick Venne, Esq., entered his appearance on behalf of the plaintiffs, who on that day also filed their Anti-SLAPP motion. *See* ECF Nos. 105, 106. The

following day, I granted a motion by Allison Economy, Esq., to withdraw as counsel for the plaintiffs. *See* ECF Nos. 107-08. On February 5, 2021, the plaintiffs filed their motion for reconsideration. *See* ECF No. 112.

## II. Plaintiffs' Anti-SLAPP Motion

### A. Applicable Legal Standards

"Maine's anti-SLAPP statute . . . permits defendants to file a special motion to dismiss civil claims against them that are based on the defendants' exercise of the constitutional right to petition." *Bradbury v. City of Eastport*, 2013 ME 72, ¶ 9, 72 A.3d 512, 515 (citation and internal quotation marks omitted). "'SLAPP,' an acronym for 'Strategic Lawsuit Against Public Participation,' refers to meritless lawsuits filed to dissuade or punish a party's exercise of its constitutional rights by imposing on it the delays and costs associated with litigation." *Id*. ¶ 9, 72 A.3d at 515-16 (citation and internal quotation marks omitted).

The anti-SLAPP statute and special motion to dismiss aim "to provide a procedural mechanism to dispose of baseless lawsuits that are brought not to vindicate the plaintiff's rights but to punish the defendant for exercising her constitutional right to petition the government, *and to do so at an early stage before the defendant incurs great expense*." *Id*. ¶ 9, 72 A.3d at 516 (citation and internal quotation marks omitted) (emphasis in original). Hence, the statute provides that an anti-SLAPP motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms the court determines proper." 14 M.R.S. § 556. "[I]n declining to exercise its discretion to permit a special motion to dismiss after the expiration of the sixty-day statutory period, a court need not consider the merits of the motion or find that the nonmoving party would be prejudiced." *Bradbury*, 2013 ME 72, ¶ 14, 72 A.3d at 517. Rather, after the sixty-day period, the court has broad discretion in determining whether, consistent with the purposes of the anti-SLAPP statute, a party may file a special motion to dismiss." *Id*.

## B. Discussion

The plaintiffs argue that the record is "replete with instances" in which they "exercis[ed] [their] right of petition, as broadly defined under Maine law[,]" for example, presenting a second requisition for payment pursuant to the amended Garage Agreement and engaging in "many written and oral exchanges with the City concerning the reasons why denial of [their] request was inappropriate[.]" Plaintiffs' Anti-SLAPP Motion at 10. They add that the record likewise is replete with instances in which the City raised its own objections "only in response to those petitioning activities[.]" *Id*. (emphasis omitted). Even assuming that the Counterclaim fairly can be characterized as "based on the [plaintiffs'] exercise of the constitutional right to petition[,]" *Bradbury*, 2013 ME 72, ¶ 9, 72 A.3d at 515 (citation and internal quotation marks omitted), for four reasons, I deny their Anti-SLAPP motion.

First, as in *Bradbury* and *Town of Madawaska v. Cayer*, No. CV-12-155, 2013 WL 8289741 (Me. Super. Ct. Dec. 23, 2013), the plaintiffs failed to seek leave to file their tardy motion. *See Bradbury*, 2013 ME 72, ¶ 16, 72 A.3d at 518; *Madawaska*, 2013 WL 8289741, at *2.

Second, the delay was inordinate. The Counterclaim was filed on October 29, 2019, *see* ECF No. 19, as a result of which the 60-day period within which to file an Anti-SLAPP motion expired on December 30, 2019. The instant motion was filed on January 26, 2021, *see* ECF No. 106, more than one year later.

Third, during that interval, and despite delays attributable to the COVID-19 pandemic, the parties engaged in intensive preliminary motion practice. Several motions to dismiss were fully briefed, including the plaintiffs' own November 19, 2019, motion to dismiss the Counterclaim on the basis of failure to state a claim, as well as three motions for sanctions, and the City produced extensive discovery, with respect to which the parties continue to meet and confer to attempt to resolve ongoing disputes. It is time to move past the pleadings stage.

Fourth, and finally, while such a mix of factors might be offset by a compelling justification, the plaintiffs offer none. They represent that, following a change in counsel, they were "only recently apprised" of their "rights to challenge the City's Counterclaim on the basis of the [Anti-SLAPP] Statute[.]" Plaintiffs' Anti-SLAPP Motion at 18. Yet, the plaintiffs have at all times been represented by able counsel. In any event, "it is well-settled that a change of counsel does not relieve a party of the effects of the rules of practice or otherwise excuse prior counsel's lapses." *Brownstone Publ'g, LLC v. AT & T, Inc.*, Cause No. 1:07-cv-1630-SEB-JMS, 2009 WL 799546, at *1 (S.D. Ind. Mar. 24, 2009). This is so for good reason:

> Parties are bound by their attorney's acts and omissions in litigation because their attorneys are their agents. Any other policy would allow easy evasion of parties' and counsel's obligations and unduly complicate and prolong case management.

*Id*.

The Plaintiffs' Anti-SLAPP Motion, accordingly, is denied.

### III.  Plaintiffs' Motion for Reconsideration

#### A.  Applicable Legal Standards

Pursuant to Local Rule 7(f), "[a] motion to reconsider an interlocutory order of the Court, meaning a motion other than one governed by Fed.R.Civ.P. 59 or 60, shall demonstrate that the order was based on a manifest error of fact or law and shall be filed within 14 days from the date of the order unless the party seeking a reconsideration shows cause for not filing within that time." Loc. R. 7(f). The plaintiffs timely filed the instant motion on February 5, 2021, within 14 days of my January 22, 2021, decision and order. *See* ECF Nos. 104, 112.

"The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (citation and internal quotation marks omitted). "Unless the court has misapprehended some material fact or point of

law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Id*.

## B. Discussion

The plaintiffs seek reconsideration of my January 22, 2021, dismissal of their amended claim against Jennings on the bases that, contrary to my findings, they properly stated a claim for tortious interference with their contractual relationship with the City by means of both fraud and intimidation and, in any event, the dismissal should not have been with prejudice. *See* Plaintiffs' Motion for Reconsideration at 4-7. In the alternative, they again seek leave to amend their complaint against Jennings. *See id*. at 8. They fall short of demonstrating a "manifest error of fact or law[,]" Loc. R. 7(f), or demonstrating any reason for the allowance of the requested amendment.

The plaintiffs first assert that, contrary to my ruling, the Second Amended Complaint stated a claim for tortious interference through fraud, meeting the standard of pleading fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b), by alleging the time (June 2015), place (a meeting between Jennings and City staff members, which would have been held at Portland City Hall), and content (directions to City staff concerning the plaintiffs' project). *See* Plaintiffs' Motion for Reconsideration at 4.

"In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Yet, the Second Amended Complaint still identifies "no specific false statements made by Jennings at specific dates and times to specific people[,]" January 22, 2021, Decision at 10, including any respect in which the content that the plaintiffs cite in their motion for reconsideration – directions to City staff concerning the Bayside project – was false.

The plaintiffs next assert that, contrary to my ruling, the Second Amended Complaint stated a claim for tortious interference through intimidation. *See* Plaintiffs' Motion for Reconsideration at 4-7.

They argue that:

1. This case is "entirely distinct" from *Howell v. Advantage Payroll Servs., Inc.*, Docket No. 2:16-cv-438-NT, 2017 WL 782881 (D. Me. Feb. 28, 2017) – quoted in my decision – in that, in *Howell*, "the plaintiff merely alleged, in conclusory fashion, that the defendant 'was aware of the contracts referenced above, and interfered with such contracts through unlawful or improper means.'" Motion at 5 (quoting *Howell*, 2017 WL 782881, at *6).

2. *Howell* contemplates that intimidation can be shown not only through overt coercion or extortion but also other conduct, *see id.*, and "it was a manifest (obvious) error of law for the Order to fail to consider the 'other conduct' alleged in the Second Amended Complaint," Plaintiffs' Reply Memorandum in Support of Motion for Reconsideration of Memorandum Decision and Order on Motions to Dismiss . . . or, in the Alternative, for Leave to Amend ("Reply") (ECF No. 122) at 3.

3. The Second Amended Complaint sufficiently alleged that Jennings engaged in such other conduct by "ma[king] it 'clear' to City staff members, both named and unnamed alike, that the only manner in which such party could avail itself of a particular benefit of working with Mr. Jennings (i.e., employment) was to breach its contract with the Plaintiffs[,]" which Jennings accomplished "by utilizing the fact that for all intents and purposes he was or imminently would become their employment supervisor, meaning they should 'do as he directs', as any employee naturally would." Plaintiffs' Motion for Reconsideration at 5 (citation omitted).

8

I did not cite *Howell* for the purpose of comparing the facts in that case with the facts here; nor did I ignore the plaintiffs' allegation that Jennings engaged in "other conduct" amounting to intimidation. To the contrary, I quoted *Howell* for the proposition that "[i]ntimidation in this context means coercion, extortion, *or other conduct that makes it clear to the party with which the plaintiff had contracted that the only manner in which that party could avail itself of a particular benefit of working with defendant would be to breach its contract with plaintiff*." January 22, 2021, Decision at 11 (citation and internal quotation marks omitted) (emphasis added).

I nonetheless concluded that, under "the well-marked boundaries" for a claim of tortious interference by means of intimidation in Maine, the Second Amended Complaint still failed to state a claim, identifying "no statement or threat communicated to any particular City employee or employees . . . that suggested adverse physical, economic, or emotional consequences to any such individual absent a breach of the [contract]." *Id*. at 10-11 (citation and internal quotation marks omitted). While the plaintiffs disagree, they have shown no manifest error of law in that conclusion.

The plaintiffs next contend that their claim against Jennings should not have been dismissed with prejudice, asserting that they "easily could have provided [greater particularity] had their attempts at discovery not been nixed from the outset." Plaintiffs' Motion for Reconsideration at 7. They assert that "it would be unjust to deprive them from refiling their complaint" against Jennings should discovery reveal additional facts relevant to that claim. *Id*. In the alternative, they seek "leave to amend their Second Amended Complaint an additional time at such time as facts of the sort this Court would deem appropriate are discovered." *Id*. at 8.

The plaintiffs could have chosen at the outset of this litigation to move to amend their complaint to add a claim against Jennings following discovery from the City designed to elicit

9

information on Jennings' involvement, but did not do so. Nor did the plaintiffs move for relief from the discovery stay imposed by the anti-SLAPP statute, which provides that "the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted." 14 M.R.S. § 556. Finally, although discovery with respect to Jennings' claim was stayed, the City represents that, by its September 4, 2020, deadline, it had produced "tens of thousands of pages of internal correspondence by and among the very City of Portland employees" whom the plaintiffs allege were intimidated by Jennings. Defendant Jon Jennings's Opposition to Plaintiffs' Motion for Reconsideration of Memorandum Decision and Order on Motion to Dismiss . . . or, in the Alternative, for Leave to Amend (ECF No. 116) at 8.[2] Yet, although the instant motion was filed four months later, on January 5, 2021, the plaintiffs cited no newly discovered evidence as a basis for their request to reconsider the dismissal of their claim with prejudice or, in the alternative, permit further amendment of their complaint. Nor have they supplied a proposed amended complaint.

The plaintiffs, accordingly, fall short of making the showing necessary to warrant either reconsideration of the dismissal with prejudice of their claim against Jennings or grant of their motion to amend their complaint.

## IV. Conclusion

For the foregoing reasons, I **DENY** both the Plaintiffs' Anti-SLAPP Motion and the Plaintiffs' Motion for Reconsideration.

Dated this 26th day of September, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[2] The plaintiffs note that, because "absolutely none of that discovery pertained to Count VII[,] . . . any documents related to Count VII would have been unresponsive." Reply at 4. Yet, they do not deny receipt of thousands of pages of internal correspondence by and among the City employees whom Jennings is alleged to have intimidated. *See id.*